**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>POTTSVILLE OPERATIONS, LLC, *et al.*,[1]<br><br>Debtors. | Case No.: 24-70418-JAD<br><br>Chapter 11<br><br>(Jointly Administered) |
| Pottsville Liquidating Trust, on behalf of the Debtors,<br><br>Plaintiff,<br><br>-vs-<br><br>West Volusia Healthcare and Rehabilitation Center (also d/b/a Deltona Operating, LLC),<br><br>Defendant. | Adv. Pro. No: 26-_____-JAD |

**COMPLAINT**

The Pottsville Liquidating Trust (the "Trust") of Pottsville Operations, LLC, Pottsville Propco, LLC, Hampton House Operations, LLC, Hampton House Propco, LLC, Kingston Operations, LLC, Kingston Propco, LLC, Williamsport North Operations, LLC, Williamsport Propco, LLC, Williamsport South Operations, LLC, Yeadon Operations, LLC, and Yeadon Propco, LLC (collectively, the "Debtors") hereby files this complaint (the "Complaint") on behalf of the estates of the Debtors against Deltona Operating, LLC, d/b/a West Volusia Healthcare and Rehabilitation Center (the "Defendant"), to (i) avoid and recover certain transfers made by the

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively the "Debtors", and the Debtors' chapter 11 cases are collectively referred to as the "Chapter 11 Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

Debtors to the Defendant in the one year before the Debtors commenced the above-captioned bankruptcy cases, pursuant to sections 544, 547, 548, 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code"); and (ii) disallow any and all claims held by the Defendant against the Debtors pursuant to section 502(d) and (j) of the Bankruptcy Code. In support of this Complaint, the Trust alleges the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Pursuant to the applicable Standing Order of Reference of the U.S. District Court for the Western District of Pennsylvania (the "Court"), this proceeding has been referred to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Trust consents to the entry of judgment or final orders with respect to this adversary proceeding if it is determined that this Court would lack Article III jurisdiction to enter judgment or final orders absent consent of the parties.

## THE PARTIES

5. On August 27, 2026, pursuant to the Plan (as defined below), the Trust was established for the benefit of holders of general unsecured claims against the Debtors entitled to receive a distribution pursuant to the terms of the Plan. The Trust, as Plaintiff, brings this action derivatively on behalf of and for the benefit of the Debtors' estates.

6. Upon information and belief, the Defendant is a corporation organization under the laws of the State of Florida, with its principal place of business at 1851 Elkcam Blvd, Deltona, FL 32725.

7. Defendant is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is both a statutory insider (including by virtue of its status as an affiliate) and a non-statutory insider that exercises dominion and control over the Debtors and the transferred funds.

## FACTUAL ALLEGATIONS

8. On October 15, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

9. The Debtors owned and operated several nursing home facilities in Pennsylvania and filed the Chapter 11 Cases to restructure their existing obligations and evaluate strategic alternatives to maximize value for the benefit of their bankruptcy estates and to ensure continuing care to the residents of their nursing home facilities.

10. On October 25, 2024, the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

11. On January 15, 2025, the Bankruptcy Court authorized the sale of substantially all of the Debtors' assets (the "Sale") pursuant to the *Order (A) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 557].

12. On November 14, 2025, the Committee filed the *Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1710] (the "Plan") along with the *Second Amended Disclosure Statement* [Docket No. 1711] (the "Disclosure Statement"). The Plan provides, among other things, that the Liquidating Trust "shall have standing on behalf of the Debtors and the Estates for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or

recovering any Pottsville Liquidating Trust Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan." Plan, § 6.9.

13. On April 30, 2026, the Committee filed the *Motion of the Official Committee of Unsecured Creditors or Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estate* [Docket No. 2135] (the "Committee Standing Motion") seeking authority to pursue causes of action on behalf of the Debtors' estates.

14. On May 21, 2026, the Court entered an order granting the Committee Standing Motion. *See* Docket No. 2171.

15. On August 11, 2026, the Court conducted a hearing on confirmation of the Plan and final approval of the Disclosure Statement. On August 12, 2026, the Court entered the order confirming the Plan and approving the Disclosure Statement on a final basis [Docket No. 2374] (the "Confirmation Order"). The Confirmation Order provides that "[u]pon the Effective Date, all of the Pottsville Liquidating Trust Assets shall vest in the Liquidating Trust . . ." Confirmation Order, ¶ 35.

16. On August 27, 2026, the Plan became effective. *See* Docket No. 2408. Accordingly, the Trust was vested with standing to pursue causes of action on behalf of the Debtors on August 27, 2026.

17. Upon information and belief, Defendant is a statutory insider and affiliate of the Debtors pursuant to 11 U.S.C. §§ 101(2) and (31) due to interlocking management, ownership, and control. Specifically, the Debtors and Defendant share common officers, directors, and managers, including Jacob Zahler, who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Defendant is a statutory insider

because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

18. Defendant further qualifies as a non-statutory insider because the Debtors and Defendant maintained a close relationship that precluded any arm’s-length dealing. Upon information and belief, the Defendant’s and the Debtors’ shared officers and directors regularly disregarded corporate formalities, failing to maintain corporate separateness and treating the Debtors and Defendant as a single, consolidated enterprise.

19. Reflecting this lack of arm's-length dealing, upon information and belief, the Debtors regularly issued payments to Defendant for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arms-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Defendant to the detriment of the Debtors' estates and legitimate creditors.

20. Additionally, upon information and belief, the Defendant owns and/or operates a nursing home facility known as West Volusia Healthcare and Rehabilitation Center, located at 1851 Elkcam Blvd, Deltona, FL 32725. West Volusia Healthcare and Rehabilitation Center is a fictitious business registered with the State of Florida Division of Corporations. Upon information and belief, the nursing home owned and/or operated by Defendant has been known by various other fictitious names during the relevant time periods.

21. On July 10, 2026, the Committee, the Debtors, PAMC Realty, LLC, and Benjamin Landa filed the *Expedited Joint Motion of the Debtors, Committee, PAMC Realty, LLC and Benjamin Landa for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019* [Docket No. 2280], which sought approval of a settlement agreement dated July

10, 2026 (the "Settlement Agreement"). Schedule 2 to the Settlement Agreement lists the "No Known Claims Parties," which are parties against whom the Committee was not aware of any potential voidable transfer claim as of the date of the Settlement Agreement. Defendant "Deltona Operating LLC" is listed on Schedule 2 as a No Known Claims Party.

22. In Paragraph 4(a) of the Settlement Agreement, the Committee represented that it had "no record of any claims or causes of action against the No Known Claims Parties." The Committee's representation was accurate when made and was based on the information then available to it. Specifically, certain accounting records provided by the Debtors and their management reflected transfers to a payee identified as "West Volusia." The Committee's review of those accounting records did not reflect any payments to Defendant Deltona Operating LLC and did not reflect any relationship between Deltona Operating LLC and an entity known as West Volusia.

23. Upon information and belief, the payments recorded in the Debtors' accounting records as transfers to "West Volusia" were made to Defendant, which, upon information and belief, owns and/or operates the nursing home known as West Volusia Healthcare and Rehabilitation Center.

24. As of and prior to the Petition Date, and at all other relevant times for purposes of this Complaint, the Debtors were and remain insolvent, including, but not limited to, because (i) the Debtors were unable to pay their debts when they became due; (ii) the Debtors' liabilities exceeded the value of their assets, as evidenced by the Schedules and Statements of Financial Affairs filed in the Chapter 11 Cases; and (iii) the consideration to be paid for the assets in the Sale is less than the Debtors' outstanding debts as of the Petition Date.

25. During the one year before the Petition Date (the "Preference Period")[2], the Debtors continued to operate their businesses, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or through other similar means, to various individuals and entities with whom the Debtors conducted business.

26. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and the Defendant engaged in transactions in which the Defendant received payment from the Debtors while the Debtors were insolvent.

27. Specifically, the Trust—based on information from the Debtors' books and records has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to the Defendant totaling **$794,894.42** (each a "Preferential Transfer" and, collectively, the "Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit A** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Two Year Transfer" and, collectively, the "Two Year Transfers") to the Defendant totaling **$794,894.42**. The Two Year Transfers are set forth in specific detail on **Exhibit B** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers and certain transfers (each a "Four Year Transfer" and, collectively, the "Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Transfers") to the Defendant totaling not less than **$794,894.42**.[3]

28. During the course of this proceeding, the Trust may learn of additional Transfers made to the Defendant that are avoidable under the Bankruptcy Code or applicable state law, or may discover additional information regarding the Defendant's defenses.

---

[2] This Complaint is filed against an insider of the Debtors, meaning, per 11 U.S.C. § 547(b), the applicable lookback period is one year prior to the Petition Date.

[3] The information regarding transfers reviewed by the Trust dates back approximately two years prior to the Petition Date. Upon information and belief the Debtors prior to that time used a different recordkeeping system and, accordingly, information regarding transfer prior to this time was not available. The Trust reserves the right to amend this Complaint in the event that additional transfers were made to the Defendant.

29. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Transfers, including additional Transfers, made to the Defendant, (ii) modifications of the Defendant's legal name, (iii) additional defendants liable for the Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

30. Notwithstanding any potential defenses to the Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code the Defendant bears the burden of proving the nonavoidability of any Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into the Defendant's potential defenses to the Transfers, which included reviewing the Debtors' available books and records.

**FIRST CLAIM FOR RELIEF**
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

31. The Trust repeats and realleges the allegations in each preceding paragraph of the Complaint as if fully set forth herein.

32. Each Preferential Transfer identified on **Exhibit A**, in the aggregate amount of **$794,894.42**, was made to the Defendant by one or more of the Debtors.

33. Each Preferential Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of the Defendant.

34. The Defendant was a creditor of one or more of the Debtors at the time of each Preferential Transfer.

35. Each Preferential Transfer was to or for the benefit of the Defendant, as a creditor of one or more of the Debtors.

36. Each Preferential Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to the Defendant.

37. Each Preferential Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Preferential Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

38. Each Preferential Transfer enabled the Defendant to receive more than the Defendant would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Preferential Transfer had not been made; and (iii) the Defendant received payment on account of the debt paid by each of the Preferential Transfers to the extent provided by the Bankruptcy Code.

39. Each Preferential Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

40. The Defendant was either the initial transferee or the entity for whose benefit each Preferential Transfer was made.

41. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from the Defendant the amount of the Preferential Transfers, plus applicable interest to the date of payment and the costs of this action.

## SECOND CLAIM FOR RELIEF
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

42. The Trust repeats and realleges the allegations in each preceding paragraph of the Complaint as if fully set forth herein.

43. The Two Year Transfers, in the aggregate amount of $794,894.42, as set forth on **Exhibit B**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

44. The Two Year Transfers were made by the Debtors to or for the benefit of the Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of such Defendant's creditors.

45. The Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

46. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

47. The Two Year Transfers were made on or within two years before the Petition Date.

48. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Two Year Transfers.

49. At the time of each of the Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Two Year Transfer in question.

50. At the time of each of the Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

51. At the time of each of the Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

52. The Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1)))**

53. The Trust repeats and realleges the allegations in each preceding paragraph of the Complaint as if fully set forth herein.

54. At all times relevant to the Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

55. The Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Four Year Transfers to or for the benefit of the Defendants, in furtherance of a fraudulent scheme.

**FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i)))**

56. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

57. At all times relevant to the Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

58. The Debtors did not receive fair consideration for the Four Year Transfers.

59. At the time of each of the Four Year Transfers, the Debtors were engaged in business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

60. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

61. At all times relevant to the Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

62. The Debtors did not receive fair consideration for the Four Year Transfers.

63. At the time of each of the Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts as they matured.

**SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

64. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

65. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

66. Defendant has not paid the amount of the Transfers, or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

67. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims, to the extent that any such claims exist, of Defendant and/or its assignee, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Defendant pays to the Trust an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

68. Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Defendant pays to the Trust an amount equal to the aggregate amount of the Transfers.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing allegations, the Trust requests that this Court grant the following relief:

A. Judgment in favor of the Trust and against the Defendant determining that the Transfers are avoidable in their entirety under applicable law;

B. Judgment in favor of the Trust and against the Defendant directing the Defendant to immediately pay to the Trust, for the benefit of the Debtors' estates, the full amount of the Transfers, plus applicable interest and costs to the maximum extent permitted by law;

C. Judgment in favor of the Trust and against the Defendant disallowing any and all claims held by the Defendant in their entirety unless and until such time as the Defendant pays to the Trust, for the benefit of the Debtors' estates, the full amount of the avoided Transfers; and

D. Such other and further relief as this Court may deem just and proper.

Dated: October 15, 2026

*/s/ Thomas D. Maxson*

Andrew C. Helman (admitted pro hac vice)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

Thomas D. Maxson (Pa. ID 63207)
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 297-4706
Email: thomas.maxson@dentons.com

Lauren M. Macksoud (admitted pro hac vice)
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Phone: (212) 768-5347
Email: lauren.macksoud@dentons.com

*Counsel for the Pottsville Liquidating Trust*